We'll hear the last orally argued case, JMC Restaurant. Good morning, Your Honors. May it please the Court, Martin Schell on behalf of the Appellant's Front Street Restaurant Corp., Marcela Pavita and Tom Tao, thank you very much for the opportunity to address the Court this morning. Can I ask you a question at the outset? And correct me if I'm misunderstanding. The landlord eventually seemed to have given you what you asked for, right? It said that any release of claims on the part of Front Street would not extend toward claims. And I understand that this is several months past the settlement deadline, but what more would you ask for at this point? I suppose you could re-enter the settlement agreement, right, or draw up a similar one. Try to see if there's any practical way to resolve this at this point. Well, Your Honor, I think it's an excellent question. And I think that release and indication came from the landlord roughly May 4th. And there was a deadline in this stipulation of settlement to complete this by December 9th. So when the parties were negotiating this, the expectation was that this would be completed before the end of the year. However, there were various breaches, and my client's position was that the deal couldn't proceed. Had the landlord provided such release at that time, then, yes, the deal probably could have proceeded. But that was not the case, and the landlord was refusing to take that position. And therefore— Now, now, now, but practically, haven't you gotten what you wanted? What is the problem? Well, I think there's damages that occurred in between that period of time. Specifically, my client still had an obligation to pay rent to the landlord between the months of January and on, basically, until they were—well, the court forced them to leave, and a stay was sought. But the expectation was that we were going to preserve our right to litigate against the landlord and not have to pay any more money to the landlord, which did not occur. And because of that, my clients did not want to proceed with the settlement. I guess it's— So are they still—do they still have that position, or put another way, what does your client want? Well, I would say, Your Honor, they want the opportunity to litigate this, and the entire case, with respect to the claims that were asserted against them by JMC, with respect to—excuse me, trademark infringement claims, and try and put the parties, I guess, back to where they were before this settlement completely fell apart. Are they still operating a restaurant in Shanghai that the plaintiffs are objecting to? No. And in fact, they never were. Well, all right. Maybe they never were. But I thought the settlement—is there a term of the settlement that requires your folks to pay some damages for whatever they did in Shanghai? Not that I'm aware of. Nothing in the settlement required any payment. So then, what is the point of litigating about whether there was a trademark violation in  There are no damages that are demanded for that, and the only issue turns out to be what goes on in a pizza parlor in Brooklyn instead. And perhaps that's the crux of this, right? And interestingly enough, I'm not totally sure if this is the case, but I recently heard that the pizza parlor in Brooklyn is perhaps no longer in operation, and was either closed down or the operator is no longer operating. So perhaps that's a potential for my client to get back into the space. But my client's expectation was to settle this case and be done with this by December 9th. And be out of there. And be out of there. But that didn't happen, because the terms of that settlement were not complied with. And were they paying rent between December and May, or were they not paying rent and they were eventually evicted? What happened? Well, what happened was they paid rent from December all the way up until my understanding is October of 2016, when the judge issued the order, the court below issued the order that basically said you have to vacate. I see. So there are still . . . they suffered costs. Yes. Because of the delay of the settlement. Even if we were to assume that what happened in May is satisfactory, it isn't satisfactory because as a result of its not being concluded in December, there were costs. Correct. What if your adversaries were agreed to pay the costs? I'm sure we would welcome that opportunity to listen to that. In the background . . . I want you to listen to it. In the background of this, it's a bit complicated because the landlord and Front Street have an ongoing lawsuit in Supreme Court with respect to interference and what damages are due under the lease. And then you have the idea of potentially attorney's fees for this order to show cause. So the bottom line is there are other issues at stake between the parties. You're happy to negotiate about those, but the whole point is if the order below is upheld, you don't get the opportunity to negotiate about any of that because the settlement is over and done with and the case is over and done with. Exactly correct, Your Honor. Okay. With some of the time that I have left, let me just perhaps say, and I think Your Honor is well aware of the issues, is that our position to highlight two things is that . . . and the appellees look at this as only one condition. There was only one condition that had to be satisfied under this stipulation of settlement, which was get a lease. We disagree with that. We say there was get a lease and enter into a long-form settlement. The stipulation clearly provided that you were not to enter into a lease until a long-form settlement was either executed beforehand or contemporaneously therewith. To this day, we don't have a long-form settlement and . . . You've got a long-form with one signature but not a signature by the other side. Is that . . . Your Honor, to my knowledge, we don't have a long-form with any signatures. My clients certainly never signed a long-form. You've got a lease and a release . . . Correct. . . . that had one signature on it, but you did not get . . . Which was supposed to be a mutual release but is not because it was not signed. Correct. When you say execution, do you know whether the old lease defines execution and how it defines execution? I wouldn't offhand, Your Honor. I apologize for that, but I would think normal legal nomenclature of execution is all parties signing it. It might be helpful, though, to see if there's any further defining language with respect to the old lease and execution. If Your Honor would like a copy, I'm happy to supplement one. I don't know if one has actually been entered into the court. I don't think it was before the court below. Let me ask one question, and I don't want to know anything about it if the answer is yes, but have the parties here been to the CAMP program that is offered by this court, civil appeals mediation plan? I assume you would have been there. Yes. Yes, we have. Okay. If you want to go again, if there's any value in going again, I won't speak for my colleagues, but I suspect we would agree that we would give you some time to decide to go and to take advantage of those services. Well, certainly after this opportunity, and thank you, Your Honors, for addressing the court, I would certainly recommend to my clients that perhaps we go back and see if we could have a further discussion based upon this opportunity and oral argument. I would just like to wrap up, Your Honor, with the last part, which is to say that the attorney's fees we respectfully submit are without basis. To my knowledge, there's been no argument raised that this argument was raised without good faith. There was no finding by the lower court that my clients were deliberately stalling or that they were not proceeding in good faith. There, to me, seems to be a good faith dispute as to whether or not the terms of this agreement were satisfied. That has been my client's from the very beginning. And there's also a bit of a time crunch here where the court issues its decision. I'll wrap up very quickly. The court issues its decision. We were looking to use the 14-day to respond. Plaintiff was trying to expedite that 14 days on the allegation that the landlord was going to stop the lease, not agree to enter into those terms. It turned out that that was untrue. In fact, when we were before Judge Kuntz on the final day, the other side recognized that the landlord was willing to further extend the deadline. And what we were trying to do was just have a sufficient amount of time to set forth our objections to the court within the confines of the 14-day provision. This is a case that has been going on for two years. And we would respectfully submit that an extra 14 days would not prejudice any party, especially if the landlord was willing to further consent to an adjournment. Thank you, Your Honors. Sorry. It's okay. Good morning, Your Honors. Marjorie Pierce on behalf of JMC. I would like to address the principal question that Your Honors raised, which is the release issue. And respectfully, what we have here is buyer's remorse. The appellant in this case agreed in paragraph 11M of the settlement stipulation that it would release all claims arising out of the existing lease. So when the long-form settlement agreement and the lease termination agreement were provided to the appellant, which included reference to the tort claims and a release executed by the landlord, so therefore they got what they bargained for. They got a new lease and a release by the landlord. There weren't tort claims running the other direction, though. There were tort claims running the other direction, Your Honor. There were tort claims running from the appellant to the landlord. There were no tort claims running from the landlord to the appellant. And the landlord signed. The landlord signed, and the landlord gave up, therefore, and in the settlement stipulation it says $180,000 in rent that it was owed by the appellant in the lease. That is a term in the settlement stipulation. The landlord was giving up $180,000. There's an attempt to claim that the tort claim is not covered by paragraph 11M, that it doesn't arise out of the lease. The record is clear that what was covered by the tort claim with the landlord arose out of the lease, and I point the Court to AA3 from the appendix as well as ECF Document 153, Note 6, which we did not include, and I apologize for that, in our papers. But that makes it clear that this dispute was over whether the appellant could cook pizza in the parking lot outside the Grimaldi's, clearly arising out of the lease. So that's what the tort claim, and then there were some other claims arising out of the lease in that tort claim. I could provide to the Court the petition if you wish. So what we have here, Your Honors, is buyer's remorse. They agreed to, after an extensive mediation session with Ken Plevin, and Your Honors know Ken Plevin is an experienced commercial litigator, he hammered out a settlement between these parties. There was one condition precedent to it. That condition precedent was that a lease get entered, which absolves the tenant of its obligations to the landlord. They got that. There's then a series, months and months of discussions, and my adversary writes a letter to Magistrate Judge Scanlon on December 23, 2016, which states that there are disputes ongoing, but they do not wish to delay things. And this is ECF Document 132. I think it's also in the appendix. Nowhere in this letter, which is December 23, 2016, does my adversary state that there's a dispute over the lease that they got. There's a dispute over whether some creditors that have surfaced with respect to the tenant, Mr. Cioli, the subtenant of Front Street, whether they have thrown a monkey wrench into the implementation of the stipulation of settlement. But going to one of the first questions that was asked, I believe it was you, Judge Katzmann, it is correct that in May of 2017, the landlord specifically stated that she would accept a release along the very lines that were in the stipulation of settlement, paragraph 11M. And so the appellant got what it bargained for. It might have had remorse over what it bargained for. Frankly, the issue as to whether that release would therefore cover the claims pending in state Supreme Court were left for another day, but it got what it bargained for. And I point your honors to Powell v. Omnicon, a case in this court where there was a settlement stipulation which was entered into on the record. A term of that settlement stipulation was that one of the parties reserved the right to sue the other party for certain claims. Afterwards, party two, the one where there was the right to sue, got cold feet about the fact that she had permitted a claim to continue. The party who wanted to preserve the right withdrew that request and the court enforced the agreement. As this court knows, the standard of review for whether there was a settlement agreement and whether a party assented to it is a clearly erroneous standard. And my adversary . . . But isn't the issue here what the settlement agreement provides and what 11M provides or doesn't provide? Your Honor, that is the issue, and I respectfully submit that Magistrate Judge Scanlon, who wrote an extensive opinion and then Judge Kuntz's decision, found that within the four corners of the settlement agreement that it provided that there was this release and that it accepted the landlord's willingness to not insist upon the tort claim being included. And so they found that there was a settlement agreement and Judge . . . But in that latter part that you just said, and I'll of course let you continue, was that included in the written document? Or was it just an oral representation or maybe a letter? The landlord submitted an affidavit, Your Honor, in connection with the motion to enforce the settlement agreement. The landlord submitted an affidavit that she would be willing to accept release language, which . . . But that's the May . . . Exactly, that's May, Your Honor. But that wasn't during the period. I'm going back to the settlement agreement itself, which says defendants waive all right, title, interest, and claims under the lease. That sounds like we're giving up the lease. It doesn't necessarily sound like they're giving up claims for tortious interference or whatever these things going on in the State Supreme Court are. And, Your Honor, that's why what I said was that whether that language would have forestalled the tort claim was left between those parties, between the landlord and Front Street, to determine whether that claim was included. Well, you say that was left for it, but the lease agreement or the release that's part of the landlord's agreement specifically calls for the Front Street folks to release the claims in tort. Your Honor, that's a performance of contract question. Once the condition precedent was met, which was a lease which released Front Street from its . . . Any lease? If you had a lease that said, oh, we've got an agreement, we've got a new tenant, and they're released from their claims from any obligation under the lease, provided they pay us a billion dollars. That wouldn't do. You can't have an agreement that imposes additional obligations on them and say, well, but it does at least cover that they don't have to pay the rent anymore. That wouldn't make sense, would it? Your Honor, under the settlement stipulation that Front Street signed, it specifically says in paragraph 5, the JMC parties, my client, may negotiate and enter into a new lease with the landlord in their sole discretion during the negotiation period. That's the lease? That's the lease, and then all the release required, and that's paragraphs 9 and 11. Which is where you are in the appendix? I am looking right now at A39, Your Honor, and then I'm going to be looking at A40. This is the settlement stipulation. I apologize. So paragraph 5, which is from the settlement stipulation, says that JMC parties may negotiate and enter a new lease with the landlord in their sole discretion during the negotiation period. And then it goes on, and it says in paragraph 9, if the JMC parties do not enter a new lease with the landlord that resolves monetary claims by the landlord against Front Street, then there will be no settlement. And paragraph 11 says, if the JMC parties enter a new lease with the landlord that resolves the monetary claims by the landlord against Front Street. There was a new lease entered which resolved the monetary claims by the landlord against Front Street. How can you say it resolved that claim if part of the condition of resolving that claim is that additional obligations are imposed on the Front Street parties? That's not just something that you can deal with in your discretion. The lease terms, as far as you or your designee entering a new lease, can be whatever they are, but they can't be... But the defendant has to give up its firstborn son. I mean, that's not... You can negotiate whatever lease you want, but you can't put in that lease a term that requires them to do something. And I'm not sure how I would see that a lease resolves the claim if it resolves the claim only on the assumption that they do something else that isn't required. That's why I thought you were relying on 11M, is because that may suggest that they did give that up. I am relying on 11M as my first argument, Your Honor, which is they did agree to give up that claim, that they got buyer's remorse. There are plenty of instances in the settlement stipulation where claims were excluded from being covered by the settlement stipulation. And I'll point, Your Honor, to multiple paragraphs where, for instance, claims against Mr. Cioli could continue, claims in China for the Shanghai restaurant could continue. And so had Front Street wanted to preserve its right to continue its tort claims against the landlord, it should have asked for that in the settlement stipulation. All those other things that you refer to are carve-outs of issues between the parties, between or among the parties to the settlement. The landlord is not a party to the settlement. And so you're saying they have to carve out from an agreement with you what they do or don't maintain against the landlord? Well, Your Honor, paragraph... And I'll point, Your Honor, to paragraph, um... on A-41, paragraph 11E of the settlement stipulation does not involve parties to... It involves my client, and then it involves non-parties to the settlement stipulation. That is, claims that my client has in Shanghai. I know my time is up, but if I could just point the court, and it's in our brief, and it's in the magistrate judge's opinion, going to your point, Your Honor, about the release. The First Department has held in, I think it's called Calacvano, that the fact that one party executed a release and the other party didn't does not obviate the effect of the first party's signature. So here, the landlord released the tenant. The fact that the tenant was unwilling, for whatever reason, was unwilling to execute the corresponding release back and insisted on money from the landlord in order to do that and insisted on money from my client in order to do that. Ultimately, the landlord agreed to mirror the language in the settlement stipulation in her release in May. That sounds like a peculiar rule. It may or may not be the meaning of that case in the First Department, but would that mean that... It's one thing to say, under New York law, I can unilaterally release claims against you, and if I sign a document saying I'm not going to pursue those claims anymore, that's fine, that's done, that's binding. It's a very different thing to say, if I sign a contract by which we mutually agree, or at least that's what the written terms say, to release claims against each other, and I sign first, you can say, Aha! I've got your signature! That's a unilateral release now, and the claims against me are released, but I'm not going to sign. And it's still binding against you. Aha! That can't be the law, can it? Well, Your Honor, it is what the First Department has said. I agree with you that it is a little bit odd, but I don't even know whether we need to reach there, because 11M, they clearly agreed that they would give up the claims, and the landlord ultimately agreed that she would marry that language. And one more point, Your Honor, I don't know whether it is accurate that rent was paid in the intervening time. I was not counsel below. I don't know the answer to that. And finally, Your Honor, I do believe that there was a camp conference, but of course if this Court... We believe that this is a clearly enforceable settlement agreement under, for all the reasons in our papers, but obviously if the Court were to request that we do something in advance, I would recommend that to my client. But I rest on my papers. If we would do that, you've been through the camp process. I was just inquiring. Sometimes when parties, generally, are in front of us in this kind of economic dispute, there's some more interchange, and then they say, well, maybe we could take another run at this, but that's totally up to you guys, not something that we would order, certainly. Let me just take you back... We could order it, and then you might come up with... You might be in the same place, but we could order it if... I don't know, Your Honor. We did go through an extensive mediation with Ken Plevin. The parties reached an agreement. It's a clear agreement. My adversary got buyer's remorse, and so I don't know whether further mediation would be helpful. I respect... What if your adversary were to say, okay, now it's fine with me? Now the settlement is fine with me? My client would be very happy. The... My client has the lease for the premises. I understand there was an issue yesterday where the... There's a bankruptcy going on, and there was a trustee appointed, that there were... There was an inventory going on. I don't know whether the restaurant has reopened today, but that is just a momentary issue. My client has the lease. My client intends to continue to, either through a subleasee or itself, I don't know what, to continue to operate that restaurant. I do want to make one final point, and I apologize. When a stay was sought in this court, and a stay was sought in the district court, both the district court and this court denied the stay. My adversary filed in the district court that this appeal would be moot if a stay was not granted. I think that's where your honors came out from the beginning, which is what is left here, and there is a settlement. The parties should just shake hands and walk away. There is a settlement, and my adversary's own words are that this appeal should be moot. So there is that possibility, which we will entertain about camp, but let's... Let me just say that. I want to ask you just a couple of things. One is I couldn't find the old lease in the record. Is that in the record? Because the release agreement says that anything not defined in the agreement carries the meaning provided in the old lease. But it's hard to... Maybe I've missed that, the old lease in the record. I'd be interested to know whether the old lease provides its own definition of the word execution. I mean, there's a standard understanding of what execution is that everything has been done that's necessary for the agreement to take effect. But I'd be interested to know what the language of that old lease says. Maybe it's in the record and I've missed it. I didn't handle the case below. I have scoured this record over the last three weeks when this court issued a scheduled argument. I don't recall seeing the old lease in the record but we certainly could go back and if it's in the record we can alert the court to its citation and if not, if the court would like to supplement the record we would be pleased to. And on Calvano Calvano I'm not sure how to interpret that case as it affects this case because in this case you have a case where the landlord isn't a party right? Correct. And so that's one difference, right? And here the release is not self-executing which is also different from Calvano at least as I understand it. So that the basic rationale that's left is whether the party who signed is also the party against whom the release would be held. And the question is, is that enough to find that the release agreement binds the landlord? I would argue it does, Your Honor. The landlord gave up by signing that release at least $180,000 in lease payments as is set forth in the settlement stipulation. So I would suggest that it is binding but as I noted earlier the district court found there was an enforceable settlement agreement here I believe that the standard of review is clearly erroneous and that the district court also found that that the appellant ratified or assented to that settlement agreement. The appellant got what it bargained for and all of the rest of these issues are for performance of the contract as the courts have set forth, not as to whether there's an enforceable settlement agreement. So for the reasons set forth in our papers, unless Your Honors have any further questions, we urge that this court find that there was an issue in order affirming the district court. Thank you both for your arguments. Thank you, Your Honor. Didn't you have time for a modal? No. Okay. Didn't reserve. Okay. Thank you. The final case is on submission. The clerk will adjourn court.